IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL MANAGEMENT CONSULTANTS, INC., | : : | |
|     **Plaintiff** | : : | |
| | : | **CIVIL ACTION** |
| v. | : : | NO.: 14-4924 |
| CONTINENTAL CASUALTY COMPANY, | : : | |
|     **Defendant** | : | |

**Jones, II      J.**                                                                                             **April 14, 2016**

**MEMORANDUM**

    Now pending before the Court is Plaintiff's Amended Complaint, (Dkt No. 5) (hereinafter "A.C."), Defendant's Motion to Dismiss for Failure to State a Claim with Respect to Plaintiff's Amended Complaint, (Dkt No. 6) (hereinafter "MTD"), Plaintiff's Response in Opposition to Motion to Dismiss, (Dkt No. 7) (hereinafter "Resp."), and Defendant's Reply in Support of Motion to Dismiss, (Dkt No. 11) (hereinafter "Reply").

**I.      Background**

    International Management Consultants, Inc. t/a IMC Construction ("Plaintiff") filed suit against Continental Casualty Company ("Defendant") based on Defendant's refusal to provide coverage to Plaintiff under a Builder's Risk insurance policy issued to the Phoenixville Area School District ("PASD") for which Plaintiff was performing building work and suffered losses as a result of flooding. (A.C. ¶¶ 8, 52.) Plaintiff entered into the contract with PASD for construction of a new middle school, administration center addition, and athletic storage building in May of 2010. (A.C. ¶ 8.) As part of the Contract, PASD was required to purchase Builder's Risk Insurance from Continental. (A.C. ¶ 11.) Plaintiff then entered into a subcontract with B&J Excavating, Inc. ("B&J") to prepare the site for the foundation and foundation walls. (A.C. ¶ 10.) In October 2010, as a result of severe rain storms that caused flooding, the foundation evidenced cracking and other signs of distress requiring remediation. (A.C. ¶ 22, 33.)  As a result of this flooding and subsequent remediation, Plaintiff incurred significant

costs. (A.C. ¶¶ 36-39.) PASD refused to compensate Plaintiff for the cost of remediation and, as a result, Plaintiff unsuccessfully sought payment and coverage under the Policy. (A.C. ¶ 40-42.)

Plaintiff alleges three causes of action: (Count I) Declaratory Judgment that Plaintiff is entitled to recover under the Policy, (A.C. ¶¶ 71-81), (Count II) Defendant breached the Policy by failing to pay IMC's Claim, (A.C. ¶¶ 82-90), (Count III) Defendant acted in bad faith in violation of 42 Pa.C.S.A. § 8371. (A.C. ¶¶ 91-99.)

Defendant filed a Motion to Dismiss all three counts of the Amended Complaint. Defendant moves to dismiss Counts I and II for failure to comply with two-year limitations period included in the Policy. Defendant moves to dismiss Count III because Plaintiff is not an "insured" as required by the statute and, even if Plaintiff were an "insured," Defendant was not unreasonable in its denial of Plaintiff's claim.

Because Plaintiff failed to comply with two-year limitations on suit required under the Policy, Counts I and II will be dismissed. Because Plaintiff is not an "insured" for purposes of the Bad Faith Statute, Count III will be dismissed.

## II.     Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted). "When considering a Rule 12(b)(6) motion, courts accept as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiffs." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

"Although a district court may not consider matters extraneous to the pleadings, 'a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (internal quotations omitted)).

### III. Discussion
#### a. Counts I and II must be dismissed for failure to comply with the Policy's two-year limitations period.

Plaintiff seeks a declaratory judgment that it is entitled to recover under the Policy and damages for breach of contract for Defendant's alleged breach of that Policy. Because the Policy is attached to the Amended Complaint as Exhibit B and is explicitly relied upon in the Amended Complaint, the Court will consider the Policy itself in determining whether Plaintiff's claims meet the plausibility standard. *Higgins*, 281 F.3d at 288. The Policy includes requirements for "Legal Action Against Us," which states that:

> No one may bring a legal action against us under this Cover Part unless:
> 1. There has been full compliance with all the terms of this Coverage Part; and
> 2. The action is brought within 2 years after you first have knowledge of the direct loss or damages.

(Dkt No. 5-2, pg. 67.) This type of contractual limitation on the time for bringing suit has been long recognized in Pennsylvania as "valid and reasonable." *Lardas v. Underwriters Ins. Co.*, 426 Pa. 47, 50 (1967). Furthermore, unlike an insurer's invocation of a notice of loss provision, the insurer need not show prejudice in order to bar a suit based on a limitation of suit clause. *Hosp. Support Servs., Ltd. v. Kemper Grp., Inc.*, 889 F.2d 1311, 1317 (3d Cir. 1989). Therefore, if it is clear from the face of the Amended Complaint that Plaintiff failed to comply with the limitation of suit clause, such a failure bars Plaintiff's suit. *Schreiber v. Pa. Lumberman's Mut. Ins. Co.*, 498 Pa. 21, 25 (1982).

Plaintiff fails to allege in its Amended Complaint the date upon which Plaintiff first had knowledge of the direct loss or damages. As a result, Plaintiff did not and could not plead the facts necessary, namely that it was in compliance with the limitation on suit provision, to recover under the Policy. In Plaintiff's Amended Complaint, however, it references the "IMC Claim" submitted to Continental on April 8, 2013. (A.C. ¶ 45.) That claim, in turn, states that:

> Following heavy rains in early October 2010 (the "Incident"), IMC was advised by the District of certain problems with portions of the foundation walls that had been poured in Area A. The foundation problems were characterized by cracking and evidence of distress and/or movement in some of the foundation walls in this area. Upon the

3

> discovery of this condition on or about October 11, 2010, B&J Excavating, Inc., IMC's site work subcontractor, undertook investigative efforts to analyze the extent and identify the causes of the cracking, and to determine how to best remedy the condition. B&J's consultant determined that the foundation issues were the result of heavy rains/flooding, surface water runoff from an adjacent golf course, and/or the presence of an old stream bed below the area of the building in question.

(MTD at 5.) Although Plaintiff admits that it was aware the flooding caused damage in October of 2010, Plaintiff claims that it did not have "knowledge of the direct loss or damages" until PASD refused to compensate Plaintiff for its remediation work related to the loss on August 24, 2012. (Resp. at 3.) Therefore, the relevant question is whether, as a matter of law, the limitation of suit provision began to accrue when Plaintiff knew the flooding caused damage requiring remediation or when Plaintiff's request for compensation for remediation work undertaken after the flooding was denied by PASD. This hinges on the definition of the term "knowledge of the direct loss or damages."

"[T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury." *Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n*, 512 Pa. 420, 426, 517 A.2d 910, 913 (1986) (quoting *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 304-05, 469 A.2d 563, 566 (1983)). When interpreting the contract, the court looks to the plain meaning of the terms. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 608 (1999) ("Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and we may inform our understanding of these terms by considering their dictionary definitions."). The Pennsylvania Supreme Court has been clear that courts must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Const. Co.*, 557 Pa. at 606 (citing *Steuart v. McChesney*, 498 Pa. 45, 53 (1982)). "[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.*

The particular set of facts as alleged by Plaintiff in its Amended Complaint, when accepted as true, demonstrate that the term "direct loss or damages" is not ambiguous in this case. First, Plaintiff's claim made to Defendant admits that Plaintiff discovered the problems caused by the flooding on October 21, 2010. Second, Plaintiff's argument that it could not know there was actually a loss until PASD failed to reimburse Plaintiff is belied by the plain language of Plaintiff's complaint where it alleges that it performed the remediation work for PASD "*under protest*." (A.C. ¶ 34.)  Even if Plaintiff did not know the full cost of remediation or the amount that PASD would refuse to pay, when Plaintiff undertook the remediation work under protest, it at least had "knowledge of the direct loss or damages" caused by the October 2010 flooding. Third, Plaintiff complains that Defendant acted improperly when

4

it settled the subcontractor B&J's claim under the policy without involving Plaintiff because Plaintiff's damages would include those paid to its subcontractors, such as B&J. (A.C. ¶ 43-50.) Rather than further Plaintiff's position, this demonstrates that such a loss had occurred sufficient to lead to a subcontractor suffering from the same damages to file suit on September 4, 2012, within the two-year time period. (A.C. ¶ 46.) Plaintiff's factual allegations involving B&J taken as true demonstrate Plaintiff's non-compliance with the limitations period. Taking all of the facts alleged by Plaintiff as true, Plaintiff has failed to comply with the limitation of suit provision as a matter of law. Because failure to comply with the limitation of suit clause bars recovery,[1] Counts I and II must be dismissed.

### b. Count III must be dismissed for lack of standing.

Plaintiff further alleges that Plaintiff is an "insured" under the Policy and that Defendant "has not reasonably investigated IMC's claim," "has not objectively and fairly considered IMC's claim," "and has acted in bad faith" for thirteen reasons many of which are redundant and most of which are not supported by factual allegations. (A.C. ¶ 92-96.) The legal allegations of bad faith that are supported by at least some factual allegations all center on Defendant's denial of Plaintiff's claim under the Policy. (A.C. ¶ 50-60.) But, because Plaintiff is not an "insured" and because Defendant had a reasonable basis for denying Plaintiff's benefits based on Plaintiff's failure to comply with the limitations period, Count III is not legally viable.

The Pennsylvania Bad Faith Statute, 42 Pa. C.S. § 8371, permits a Court to impose certain damages against an insurer "[i]n an action arising under an insurance policy, if the court finds that an insurer has acted in bad faith toward the insured." The first page of the Policy specifically identifies the "Insured" as Phoenixville Area School District and at the top of subsequent pages. Plaintiff alleges that "IMC is an insured under the Policy because IMC is covered by insurance (i.e. the Policy) on its property and thus, IMC is insured under the Policy." (A.C. ¶ 92.) Although the Court takes Plaintiff's factual allegations as true, those allegations must meet the plausibility standard and cannot simply be conclusions of law. Plaintiff attached the Policy as an exhibit to its amended complaint and at no point in that Policy is Plaintiff included as an "insured" under the Policy. Furthermore, there is no language in the Policy that would render Plaintiff an "insured" for purposes of the Policy. "Pennsylvania law makes clear that the insurer's duty to act in good faith belongs to those persons who qualify as 'insureds' under

---

[1] Plaintiff argues that the limitation of suit clause, which provides that "no one may bring a legal action . . . unless the action is brought within 2 years," does not apply to Plaintiff. (Resp. 9-10.) Plaintiff argues that the term "no one" is an ambiguous term that the Court should not construe to apply to Plaintiff. (Resp. 9-10.) This argument so egregiously stretches the bounds of reasonableness as to be devoid of a single iota of credibility.

the policy." *Seasor v. Liberty Mut. Ins. Co.*, 941 F. Supp. 488, 490 (E.D. Pa. 1996), *aff'd*, 116 F.3d 469 (3d Cir. 1997) (citing *Dercoli v. Pa. National Mutual Ins. Co.*, 520 Pa. 471, 554 A.2d 906 (1989)). Even if a party qualifies as an insured for one purpose, the same party could still be excluded from being an insured for purposes of the bad faith statute. *Id.* Here, Plaintiff is not named as an insured explicitly in the Policy or by any of the policy terms, nor is Plaintiff acting on behalf of an insured. Because Plaintiff did not have an insurance policy with Defendant has not alleged any facts that, taken as true, would show it qualifies as an "insured," Plaintiff's bad faith claim must be dismissed. *Detweiler v. Nationwide Ins. Co.*, No. CIV. A. 00-1776, 2000 WL 1612038, at *2 (E.D. Pa. Oct. 27, 2000).[2]

### IV. Conclusion

Based on the foregoing, Defendant's Motion to Dismiss will be GRANTED.

Because the failure to comply with the limitation of suit clause and lack of standing cannot conceivably be cured, Plaintiff will not be granted leave to amend.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. DARNELL JONES, II    J.

---

[2] Even if Plaintiff could have standing to pursue a bad faith claim, Plaintiff's allegations center on Plaintiff's belief that Defendant was unreasonable and unfair in denying Plaintiff's claim while agreeing to pay the B&J claim because the claims were "based on the same grounds of entitlement and coverage." (A.C. ¶ 55, 60.) Plaintiff, however, wholly ignores the fact that B&J filed both its claim and civil action within the two-year limitations period. While B&J filed its civil action on September 4, 2012, Plaintiff did not bring suit until August 22, 2014, almost four full years later. (A.C. ¶ 46.) Therefore, even if Plaintiff had standing to pursue the bad faith claim, the facts alleged in Plaintiff's Amended Complaint provide a reasonable basis for the difference in treatment.